**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA VOLLMER, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:16-cv-00370 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | |
| AMAZON.COM, INC., et al., | : | Magistrate Judge Elizabeth |
| | : | Preston Deavers |
| Defendants. | : | |

**REDBUBBLE INC. AND ZAZZLE INC.'S
MOTION TO DISMISS FOR LACK OF JURISDICTION, OR, IN THE ALTERNATIVE,
TO DISMISS PLAINTIFFS' CLAIM FOR COUNTERFEITING**

Pursuant to Fed. R. Civ. P. 12(b)(2) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Defendants Redbubble Inc. ("Redbubble") and Zazzle Inc. ("Zazzle") respectfully move the Court to dismiss Plaintiffs' entire Complaint against them for lack of personal jurisdiction and/or in favor of arbitration.

In the alternative, pursuant to Fed. R. Civ. P. 12(b)(6), Redbubble and Zazzle respectfully move the Court to dismiss Count Three of the Complaint (for counterfeiting under 15 U.S.C. § 1114) for failure to state a claim upon which relief can be granted.

This motion is supported by the Memorandum of Law below. The Motion to Dismiss for Lack of Jurisdiction is further supported by the accompanying Declarations of Corina Davis ("Davis Decl.") and Jason Kang ("Kang Decl."), and the Exhibits attached thereto. The Motion to Dismiss Plaintiffs' Claim for Counterfeiting is further supported by the accompanying Declaration of Jason B. Mollick ("Mollick Decl."), and the Exhibit attached thereto.

Dated:  June 17, 2016

Respectfully submitted,

_s/ Mitchell A. Tobias_
Mitchell A. Tobias (0084833)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6214
Facsimile: (614) 719-4627
Email: matobias@vorys.com

Brian M. Willen (_admitted pro hac vice_)
Jason B. Mollick (_admitted pro hac vice_)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com
Email: jmollick@wsgr.com

_Counsel for Defendants_
_Redbubble Inc. and Zazzle Inc._

## INTRODUCTION & SUMMARY OF ARGUMENT

Defendants Redbubble Inc. ("Redbubble") and Zazzle Inc. ("Zazzle") are online marketplaces that facilitate the sale of wearable, useable, and decorative consumer products around the world. Plaintiffs, Linda Vollmer and Love to Teach, LLC (collectively "Plaintiffs"), allege that Redbubble, Zazzle, and the other defendants in this case infringed their trademark by selling t-shirts bearing the registered phrase, "GOT HOPE? I DO." There is, however, no basis to assert personal jurisdiction over either Redbubble or Zazzle in this Court, and the only purported grounds for jurisdiction give rise to binding arbitration between the parties. Even if there were jurisdiction, moreover, Plaintiffs' counterfeiting claim must be dismissed as a matter of law.

**Personal Jurisdiction.** As an initial matter, Redbubble and Zazzle are not subject to general jurisdiction in the State of Ohio. Their only material contacts with Ohio are through the operation of widely accessible websites that advertise and facilitate the sale of products to anyone with an Internet connection. The Sixth Circuit has repeatedly held that the mere operation of websites such as Redbubble and Zazzle is insufficient to create general jurisdiction in Ohio, even if Ohioans regularly purchase products listed on those sites.

Plaintiffs' sole allegation in support of jurisdiction is that Redbubble and Zazzle "sold and delivered infringing merchandise into the Southern District of Ohio." But this allegation reflects an improper attempt to manufacture personal jurisdiction that otherwise does not exist. It was Plaintiff herself who purchased the allegedly "infringing merchandise" and who ordered those products to be shipped into this State. Indeed, Ms. Vollmer is the *only person* ever to purchase merchandise bearing the words "GOT HOPE? I DO." from either Redbubble or Zazzle. A plaintiff cannot create personal jurisdiction through her own conduct, including by purchasing allegedly infringing products in the forum state. Such conduct particularly cannot serve as a basis for jurisdiction in a trademark action (which requires a showing of consumer confusion), because

the trademark owner who purchases the product cannot possibly be confused by the product's source. Since neither Redbubble nor Zazzle made any sales of allegedly infringing products to a bona fide, third-party customer in Ohio, there are no grounds for specific jurisdiction in this case.

**Mandatory Arbitration.** Even if Ms. Vollmer did create personal jurisdiction by purchasing products listed on Defendants' websites, her conduct still necessitates a dismissal or stay of these proceeding. When Ms. Vollmer purchased the allegedly infringing t-shirts on Redbubble and Zazzle, she consented to the User Agreements which govern those websites. Both Redbubble and Zazzle's governing agreements state clearly that all disputes relating to the purchase of products on the sites are subject to binding arbitration in California. Accordingly, insofar as Plaintiffs seek to base their claims on purchases that Ms. Vollmer made on Redbubble or Zazzle, the Court must dismiss or stay those claims in favor of arbitration.

**Counterfeiting Claim.** Assuming *arguendo* that the Court had jurisdiction over Redbubble and Zazzle, the Court should dismiss Count Three of the Complaint (for counterfeiting under 15 U.S.C. § 1114) for failure to state a claim. A counterfeiting claim requires a near identity between the original mark and the use of the mark in the accused item. This is a demanding standard, and Plaintiffs here cannot satisfy it. Even a cursory comparison between the t-shirts Plaintiffs sell and the items they claim to have purchased on Redbubble and Zazzle show that the products look nothing alike. Though they used the same words, the products did so in totally different ways, with different fonts, sizes, colors, layouts, logos, and text. As a matter of law, the accused t-shirts are not counterfeits of Plaintiffs' items. Beyond that, Plaintiffs fail to allege any facts showing that Defendants intentionally and knowingly sold counterfeit marks. Indeed, the Complaint does not allege that Redbubble or Zazzle even knew Plaintiffs' trademark *existed*. That is insufficient to allege counterfeiting.

## FACTUAL BACKGROUND

### A.      Plaintiffs Linda Vollmer and Love to Teach, LLC

Plaintiff Linda Vollmer alleges that she is the owner of the registered mark "GOT

HOPE? I DO." (the "Mark"). Compl. ¶¶ 2-3. Ms. Vollmer and her company, Love to Teach,

LLC, have allegedly sold merchandise bearing the Mark since 2006. *Id.* ¶ 12. Ms. Vollmer has

registered the Mark only in connection with the sale of shirts. *Id.* ¶¶ 3-4 & Ex. 1.

In connection with her trademark registration application, Ms. Vollmer filed a product

specimen with the United States Patent and Trademark Office ("USPTO") that shows how she

uses the Mark on the shirts she sells. *See* Mollick Decl. Ex. 1 (pictured here).[1] The specimen

shows the Mark on a solid-colored t-shirt in all lowercase, black "Haettenschweiler" font, with

**got hope?** on the front and **i do.** on the back—an obvious knock-off of the famous "got milk?"

campaign. Ms. Vollmer's website ([www.gothopeido.com](http://www.gothopeido.com)) offers other t-shirts

([www.gothopeido.com/basic_t-shirt.html](http://www.gothopeido.com/basic_t-shirt.html)) and sweatshirts

([www.gothopeido.com/got_hope_i_do_sweat.html](http://www.gothopeido.com/got_hope_i_do_sweat.html)) with the same

design, as well as "scoop neck" shirts with a capital "G" and

slightly modified and italicized font ([www.gothopeido.com/](http://www.gothopeido.com/ladies_scoop_necks.html)

[ladies_scoop_necks.html](http://www.gothopeido.com/ladies_scoop_necks.html)).[2] On each product, the phrases "got



---

[1] Ms. Vollmer's USPTO trademark application is incorporated by reference in her Complaint
(¶¶ 3-4 & Ex. 1), and the Court may take judicial notice of it. *See, e.g., Mettke v. Hewlett
Packard Co.*, No. 2:11-CV-00410, 2012 U.S. Dist. LEXIS 49164, at *9 n.2 (S.D. Ohio Apr. 6,
2012) (USPTO applications "are government maintained public documents of which the Court
may take judicial notice"); *Johnson v. Apple, Inc.*, No. 3:13-cv-204, 2014 U.S. Dist. LEXIS
112867, at *7 n.3 (S.D. Ohio Aug. 14, 2014) (taking judicial notice of patent application); *Slep-
Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014) (taking judicial
notice of "Specimen Description" portion of trademark application); *see also* Fed. R. Evid. 201.

[2] The Court may consider Ms. Vollmer's website, which offers "GOT HOPE? I DO."
merchandise, because the products and website are "referred to in the plaintiff's complaint and
are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citation

hope?" and "i do." appear in uniform font, size, and color, in the same position on opposite sides of the shirt, with no additional text or images.

### B.     Defendants Redbubble and Zazzle

Redbubble, a Delaware corporation, is a wholly-owned subsidiary of Redbubble Limited, an Australian corporation. Davis Decl. ¶ 2. Redbubble has offices in Australia and California. *Id.* ¶ 3. Its website (www.redbubble.com) is an online marketplace where independent artists can advertise and sell creative works to customers around the world. *Id.* ¶ 4. Redbubble allows artists to upload their designs and offer them for sale on a variety of products. *Id.* When a user selects and purchases an item, third-party manufacturers print the artist's design on the chosen product and third-party shippers deliver the product directly from the manufacturer to the customer. *Id.* ¶ 5. Redbubble sells no products and keeps no inventory—all designs are uploaded by independent artists and all products are uniquely made by third-party fulfillers upon order. *Id.* ¶ 6.

Zazzle is a California corporation with its headquarters in California. Kang Decl. ¶ 2. Its website (www.zazzle.com) is an online marketplace where independent designers can create and publish their designs on a vast array of products. *Id.* ¶ 3. In addition, Zazzle collects digital images from third-party partners who authorize Zazzle to market and sell products incorporating their brands. *Id.* ¶ 4. Zazzle also allows individual users to create and purchase custom products using their own user-uploaded images and designs. *Id.* ¶ 5. After a customer places an order to be fulfilled by Zazzle, Zazzle embellishes the product with the user's chosen design and delivers it to the customer. *Id.* ¶ 6. Zazzle makes or embellishes all products upon receipt of any order placed by its customers. *Id.* ¶ 7. With some limited exceptions (none of which involves Plaintiffs' Mark), Zazzle does not maintain any inventory of pre-printed merchandise. *Id.*

---

omitted); *see also* Compl. ¶ 12 ("Plaintiffs began selling GOT HOPE? I DO. branded merchandise in commerce in 2006, wholesale and retail, in person *and via the internet*, and has [sic] continued to do so continuously since that time.") (emphasis added).

Redbubble and Zazzle's only contacts with the State of Ohio are through the operation of websites which are generally accessible to anyone with an Internet connection around the world. Davis Decl. ¶ 7; Kang Decl. ¶ 8. Neither company owns or operates any offices, facilities, telephone listings, mailing addresses, bank accounts, or other personal or real property in Ohio. Davis Decl. ¶ 8; Kang Decl. ¶ 9. None of their officers, directors, or employees work or reside in Ohio, and no meetings of their boards of directors or shareholders have been held in Ohio. Davis Decl. ¶¶ 9-10; Kang Decl. ¶¶ 10-11. They do not direct any advertising specifically toward Ohioans, or advertise in publications directed primarily at Ohioans. Davis Decl. ¶ 11; Kang Decl. ¶ 12. Sales to Ohio customers on Redbubble and Zazzle's websites comprise only 1.88% and 2.4% of their total revenues worldwide, respectively. Davis Decl. ¶ 12; Kang Decl. ¶ 13.

### C.    Plaintiffs' Purchase of "Infringing" T-Shirts on Redbubble and Zazzle

Plaintiffs allege that Redbubble and Zazzle engaged in trademark infringement, unfair competition, passing off, and counterfeiting in light of their alleged sale of "t-shirts and other merchandise" bearing Ms. Vollmer's Mark. Compl. ¶ 1. Plaintiffs allege that in April 2016, Redbubble and Zazzle "sold and delivered infringing merchandise into the Southern District of Ohio." *Id.* ¶¶ 19-22 & Exs. 9-12. Those sales, however, were made in response to purchase orders by Ms. Vollmer *herself* only days before she filed the Complaint. In fact, Ms. Vollmer is the only person ever to purchase a "GOT HOPE? I DO." product through Redbubble or Zazzle. Davis Decl. ¶¶ 14-15; Kang Decl. ¶¶ 15-16.

The shirt that Ms. Vollmer purchased through Redbubble, shown in Exhibit 10 to her Complaint (pictured here), says "got hope?" and "I do." in different sizes and colors, on the same side of the shirt, accompanied by a large pink ribbon. The phrase "got hope?" is in black,



uneven font arranged vertically to the left of the ribbon. Beneath "got hope?" and the ribbon is "I do." written horizontally in larger, pink font. This design was uploaded to Redbubble by a third-party with the screenname, "OffensiveFun." Compl. Ex. 9 at p.12. It was not created, uploaded, manufactured, shipped, or sold by Redbubble itself. Davis Decl. ¶ 13.

The shirt that Ms. Vollmer claims to have purchased through Zazzle, shown in Exhibit 12 to her Complaint (pictured here), states on four separate lines of thick, rounded, black font: "Got Hope? / I Do / Want to know why? / 1 Peter 3:15". The phrases "Got Hope?" and "I Do" are in the same font, although larger than the bottom two lines. Like the Redbubble shirt, those phrases are on the same side of the t-shirt and are accompanied by additional content. The design was uploaded to Zazzle by a third-party user with a screenname beginning, "Spirit." Compl. Ex. 11. It was not created or uploaded by Zazzle itself. Kang Decl. ¶ 14.



In purchasing these items, Ms. Vollmer subjected herself to Redbubble and Zazzle's respective User Agreements which govern the sale of items on their websites. Davis Decl. ¶ 16 & Ex. A; Kang Decl. ¶ 17 & Ex. A. Both agreements expressly state that all disputes relating in any way to an individual's use of those websites (including the purchase of products) are subject to binding arbitration in California. Davis Decl. ¶ 17 & Ex. A at 10; Kang Decl. ¶ 18 & Ex. A at 15.

## ARGUMENT

### I.  ALL CLAIMS AGAINST REDBUBBLE AND ZAZZLE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

"The plaintiff bears the burden of establishing through 'specific facts' that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not

stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed. Appx. 518, 521 (6th Cir. 2006) (citation omitted). In this case, the facts show clearly that neither Redbubble nor Zazzle is subject to jurisdiction in Ohio.

**A.     Redbubble and Zazzle Are Not Subject to General Jurisdiction in Ohio**

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Dolce & Gabbana Trademarks S.R.L. v. Txt Enters.*, No. 1:14-cv-00855, 2016 U.S. Dist. LEXIS 30262, at *4 (S.D. Ohio Mar. 9, 2016) (citation omitted). As explained above (*supra* at 4-5), Redbubble and Zazzle are not incorporated in Ohio; do not own or operate any offices, facilities, telephone listings, mailing addresses, bank accounts, or other personal or real property in Ohio; do not have officers, directors, or employees who work or reside in Ohio; have not held board of directors or shareholders meetings in Ohio; and have not directed any advertising specifically to Ohioans. Put simply, neither company is in any sense "at home" in Ohio. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

The only material contacts that Redbubble and Zazzle have with Ohio are through the operation of widely accessible websites that advertise and sell products to anyone with an Internet connection around the world. Sales to Ohioans through Redbubble and Zazzle comprise merely 1.88% and 2.4% of total revenues for each website, respectively. But that is not nearly enough, because the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even if that website sells products to thousands of Ohioans on an annual basis. *Bird v. Parsons*, 289 F.3d 865, 873-74 (6th Cir. 2002) (finding no general jurisdiction over interactive website that allegedly sold domain names to nearly 5,000

Ohioans a year, because such conduct "fails to establish that Dotster has a 'continuous and systematic' presence in Ohio"); *see also, e.g., Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675, 677 (6th Cir. 2005) ("[T]he operation of 'a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction,' even where the website enables the defendant to do business with residents of the forum state, because such activity does not 'approximate[] physical presence within the state's borders.'") (quoting *Bird*, 289 F.3d at 874). As explained by the Federal Circuit, "[t]o subject a nonresident corporate defendant ... to suit in [a forum state] solely on the basis of a minuscule number of e-commerce sales that are unrelated to the cause of the plaintiff's alleged injury would, we think, render established jurisdictional boundaries meaningless." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 337-38 (Fed. Cir. 2003); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011) ("[M]ere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). So it is here: general jurisdiction does not exist over Redbubble or Zazzle based on their operation of generally accessible websites that sell unrelated and non-infringing products around the world, including to Ohioans.

### B. Redbubble and Zazzle Are Not Subject to Specific Jurisdiction in this Case

#### 1. Plaintiffs Must Show That Redbubble and Zazzle Sold Allegedly Infringing Products to Third-Party Customers in the State of Ohio

"Specific jurisdiction subjects a defendant to jurisdiction for claims that arise from or relate to the defendant's specific contacts with the state." *513 Ventures, LLC v. PIV Enters.*, No. 1:11-cv-573, 2012 U.S. Dist. LEXIS 39775, at *5 (S.D. Ohio Mar. 23, 2012). Because Ohio's long-arm statute "does not extend to the constitutional limits of the Due Process Clause" (*id.* at *4)*, Plaintiffs must establish that jurisdiction is proper under both (1) Ohio's long-arm statute

and (2) the Due Process Clause. *See William R. Hague, Inc. v. Puretech Water Sys.*, No. 2:09-cv-00160, 2010 U.S. Dist. LEXIS 48901, at *5 (S.D. Ohio Mar. 9, 2010).

Ohio's long-arm statute authorizes specific jurisdiction based on the commission of certain acts committed by defendants in, or directed toward, the State of Ohio. Ohio Rev. Code § 2307.382(A). However, "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action *arising from acts enumerated in this section* may be asserted against him." *Id.* § 2307.382(C) (emphasis added). Similarly, to establish specific jurisdiction under the Due Process Clause, "the cause of action must *arise from the defendant's activities there*[.]" *Cadle*, 123 Fed. Appx. at 677 (emphasis added; citation omitted). "Even if a defendant purposefully avails himself to the benefits of doing business in a forum, the exercise of specific jurisdiction only complies with due process if the cause of action … ha[s] a substantial connection with the defendant's in-state activities." *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 472-73 (6th Cir. 2012) ("no substantial connection" between residents using defendant's website and plaintiff's trademark claim, because such activity "is, at best, tangentially related to the allegation that the Defendants' use of the Plaintiff's trademark is confusing").

Where, as here, a cause of action arises from the sale of allegedly infringing products, the central question is *whether defendant sold the accused products in Ohio*. This makes sense, because an act of trademark or patent infringement "occurs where the sale of the infringing product occurs." *Bath & Body Works v. Wal-Mart Stores*, No. C-2-99-1190, 2000 U.S. Dist. LEXIS 20168, at *12 (S.D. Ohio Sept. 12, 2000) (citing *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 64 F. Supp. 2d 705, 708 (S.D. Ohio 1999) ("[T]he locus of the injury allegedly caused by Defendant's sales of infringing products is the place where those sales occurred, not Ohio where Plaintiff has its principal place of business."), *rev'd on other grounds*, 232 F.3d 1369, 1375 (Fed.

Cir. 2000)); *see also Zoya Co. v. Julep Nail Parlor Co.*, No. 1:11-cv-1702, 2011 U.S. Dist. LEXIS 136857, at *5-6 (N.D. Ohio Nov. 29, 2011) ("[I]n cases of trademark infringement the wrong occurs where the passing off occurs, that is, where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's[.]") (citation omitted). Thus, Ohio courts have exercised specific jurisdiction over defendants who sold allegedly infringing products to customers in the state. *Id.* at *6, 11; *see also, e.g., Solar X Eyewear, LLC v. Bowyer*, No. 1:11-CV-00763, 2011 U.S. Dist. LEXIS 85799, at *6, 11-12 (N.D. Ohio Aug. 4, 2011); *Bath & Body Works*, 2000 U.S. Dist. LEXIS 20168, at *12-20, 29.

On the other hand, specific jurisdiction does *not* exist over a defendant who never sold accused products in Ohio, even if the defendant (i) *offered* that product for sale on an interactive website accessible to Ohioans, and (ii) sold *unrelated* products into the state. That was the situation in *Canplas Industries v. InterVac Design Corp.*, No. 1:13 CV 1565, 2013 U.S. Dist. LEXIS 166277, at *7-14 (N.D. Ohio Nov. 22, 2013). Although InterVac's sale of unrelated products may have been enough to constitute doing "business" in Ohio, there was no personal jurisdiction because the action did "not arise from InterVac's acts in Ohio because it has sold none of the *Accused Product* in this state." *Id.* at *8-9, 14 (emphasis added). The court rejected the notion "that offering an allegedly infringing product for sale via a website, when none of the products has actually been sold or shipped to this district, can substantiate a finding of personal jurisdiction …." *Id.* at *10-11; *see also Nubonau, Inc. v. NB Labs, Ltd.*, No. 10-cv-2631-LAB (BGS), 2012 U.S. Dist. LEXIS 32963, at *14-16 (S.D. Cal. Mar. 9, 2012) (no personal jurisdiction where defendant only sold non-infringing products in the forum state); *LSI Indus.*, 64 F. Supp. 2d at 706-08 (no specific jurisdiction in trademark infringement action where defendant sold numerous products in Ohio but never sold accused products in the state).

2.      Plaintiff Linda Vollmer is the Only Person Ever to Purchase a "GOT HOPE? I DO." Product from Redbubble or Zazzle Anywhere in the World

In this case, although Ohioans have purchased *non-infringing* products through Redbubble and Zazzle, no bona-fide, third-party customer has ever purchased an *accused* product containing the phrase "GOT HOPE? I DO." through those sites. Davis Decl. ¶¶ 14-15; Kang Decl. ¶¶ 15-16. The only person who purchased such items from Redbubble or Zazzle is Ms. Vollmer herself. *Id.* In their Complaint, Plaintiffs attempt to use Ms. Vollmer's own purchases as the sole basis for establishing jurisdiction over Redbubble and Zazzle. Compl. ¶¶ 19-22 & Exs. 9-12. This effort fails as a matter of law.

"It is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff." *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 88-89 (E.D.N.Y. 2006). Courts "have repeatedly held that [personal] jurisdiction may not be manufactured by the conduct of others because under such circumstances a defendant cannot be said to have purposefully availed itself of the forum." *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 506 (E.D. Mich. 2004) (internal marks and citations omitted); *see also, e.g., Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623-24 (S.D.N.Y. 2013) ("Courts in this District and elsewhere have expressed 'hostility towards finding jurisdiction under such potentially manufactured circumstances.'") (collecting cases). "Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral, acts of the plaintiff, should be considered for due process purposes." *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998); *accord, e.g., Millennium Enters. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) (same). "Therefore, a defendant's contacts with the forum state that were manufactured by the unilateral acts of a plaintiff are disregarded for personal jurisdiction purposes." *McGill Tech.*, 300 F. Supp. at 506.

This rule applies with special force "where, as here, plaintiffs' causes of action are founded on notions of consumer confusion." *Buccellati Holding Italia*, 935 F. Supp. 2d at 624. In such cases, "courts have concluded that it is improper to rely on a transaction—for jurisdictional purposes—in which the purchaser obviously was not confused as to the source of the merchandise." *Id.* Accordingly, ***"[a] plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state."*** *Adobe Sys. v. Trinity Software Distrib.*, No. C 12-1614 SI, 2012 U.S. Dist. LEXIS 123159, at *16-17, 21-22 (N.D. Cal. Aug. 29, 2012) (emphasis added; citation omitted) (dismissing trademark infringement suit for lack of personal jurisdiction where "plaintiff has not established that any sales of the allegedly infringing product were made to California other than its own purchase of the product"); *Nubonau*, 2012 U.S. Dist. LEXIS 32963, at *11-12 (dismissing trademark infringement suit where only sales of infringing products in forum state were made to plaintiff's agents, because "this kind of orchestrated purchase cannot give rise to personal jurisdiction"); *Millennium Enters.*, 33 F. Supp. 2d at 911 ("Defendants cannot be said to have 'purposely' availed themselves of the protections of this forum when it was an act of someone associated with plaintiff, rather than defendants' Web site advertising, that brought defendants' product into this forum…. Plaintiff can hardly argue that such action 'caused a likelihood of confusion' regarding plaintiff's and defendants' trade names; [plaintiff's agent] knew exactly with whom she was dealing and knew that defendants were not associated in any way with plaintiff."); *ISI Brands*, 458 F. Supp. 2d at 88-89 (same); *Mattel, Inc. v. Anderson*, No. 04 Civ. 5275 (RCC), 2005 U.S. Dist. LEXIS 14404, at *6-7 (S.D.N.Y. July 18, 2005) (same).

Plaintiffs here run headlong into these principles. Because the only Ohio sales of "GOT HOPE? I DO." items through Redbubble or Zazzle were made to Ms. Vollmer herself, those

transactions cannot provide a basis for personal jurisdiction. Those sales reflect improper attempts by Plaintiffs to manufacture "infringing" contacts with Ohio, and there could have been no confusion, harm, or loss from those sales. Because Plaintiffs have no other basis to establish specific jurisdiction over Redbubble and Zazzle, their claims must be dismissed.

## II. ALL DISPUTES REGARDING PLAINTIFFS' PURCHASE OF PRODUCTS ON REDBUBBLE AND ZAZZLE ARE SUBJECT TO BINDING ARBITRATION

Even if Plaintiffs did somehow create personal jurisdiction by purchasing products on Redbubble and Zazzle, the Court should still dismiss or stay this action in favor or arbitration under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA"). In purchasing the allegedly infringing t-shirts, Ms. Vollmer consented to the User Agreements governing both websites, which explicitly state, under bold "Dispute Resolution" headers, that all disputes relating to her use of the websites must be resolved through binding arbitration in California. *See* Davis Decl. ¶¶ 16-17 & Ex. A at 10 ("This User Agreement and all disputes relating to this User Agreement, or relating to your use of any part of the Redbubble service, will be exclusively resolved under confidential binding arbitration held in San Francisco, California."); Kang Decl. ¶¶ 17-18 & Ex. A at 15 ("Any dispute relating in any way to your visit to the [Zazzle] Site or to the products you purchase through the Site shall be submitted to confidential binding arbitration in the City of San Mateo, Northern California for the maximum judgment enforceable[.]").

The FAA "establishes a liberal policy favoring arbitration agreements," and "requires courts to 'rigorously enforce'" those agreements. *Studer Grp., LLC v. Cleveland Clinic Found.*, No. 1:10-CV-1957, 2014 U.S. Dist. LEXIS 61832, at *10 (N.D. Ohio May 5, 2014) (citation omitted). The FAA mandates that a written arbitration clause in a commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a pending lawsuit is referable to arbitration under an

agreement between the parties, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.* § 3. The Court must consider: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "whether Congress intended [Plaintiffs'] claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). All elements are easily satisfied here.

*First*, Ms. Vollmer's purchase of products on Redbubble and Zazzle was subject to the User Agreements governing those websites. *See* Davis Decl. ¶¶ 16-17 & Ex. A; Kang Decl. ¶¶ 17-18 & Ex. A; *accord Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 765 (N.D. Ohio 2009) (requiring plaintiffs to arbitrate in accordance with standard Customer Agreement).

*Second*, all claims asserted in this case fall within the broad scope of the arbitration clauses. Plaintiffs rely upon Ms. Vollmer's purchase of products on Redbubble and Zazzle as the sole basis for establishing personal jurisdiction and for her claims. Compl. ¶¶ 19-22 & Exs. 9-12. Those purchases are covered by the User Agreements, which govern "*all disputes … relating to [her] use of any part of the Redbubble service*" and "*[a]ny dispute relating in any way to [her] visit to the [Zazzle] Site or to the products [she] purchase[d] through the Site[.]*" Davis Decl. Ex. A at 10; Kang Decl. Ex. A at 15 (emphases added); *cf. Patnik v. Citicorp Bank Trust FSB*, 412 F. Supp. 2d 753, 759 (N.D. Ohio 2005) ("If the arbitration clause is broad, all claims are reserved for arbitration absent an express provision excluding a particular dispute or the most forceful evidence of an intent to exclude a particular claim.").

*Third*, "[c]ourts have routinely held that claims falling under the Lanham Act are arbitrable." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999); *accord, e.g., 3-J*

*Hospitality, LLC v. Big Time Design, Inc.*, No. 09-61077-CIV-MARRA/JOHNSON, 2009 U.S. Dist. LEXIS 100601, at *5-6 (S.D. Fla. Oct. 27, 2009).

*Fourth*, although Section 3 of the FAA authorizes the Court to "stay" a lawsuit pending arbitration, "[i]f all the claims in the case are within the scope of the arbitration agreement and there is nothing left for the district court to do but execute judgment, dismissal [of the case] is appropriate." *Stachurski*, 642 F. Supp. 2d at 764, 774 (dismissing suit pursuant to Fed. R. Civ. P. 12(b)(1) where all claims against defendant were referable to arbitration). This action should therefore be dismissed as to Redbubble and Zazzle in favor of arbitration.

## III.  IN THE ALTERNATIVE, PLAINTIFFS' COUNTERFEITING CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if the Court had jurisdiction, it should dismiss Plaintiffs' counterfeiting cause of action (Count Three) for failure to state a claim. Compl. ¶¶ 41-44.

A counterfeiting claim under the Lanham Act is a narrow cause of action that goes above and beyond the requirements for an ordinary trademark infringement claim. "Counterfeiting" is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002). To state a claim, Plaintiffs must show that Redbubble and Zazzle (1) sold products with a "counterfeit" of the Mark, and (2) "intentionally used the [M]ark knowing it was a counterfeit." *Id.* And they must do so with sufficient plausibility to satisfy the pleading requirements laid down by the Supreme Court. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. A complaint does not suffice "if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs do not come close to meeting these standards. Indeed, it is clear from the face of the Complaint that the allegedly infringing items sold through Redbubble and Zazzle's marketplaces were not counterfeits as a matter of law. Beyond that, Plaintiffs allege no facts from which it is possible (much less plausible) to conclude that Redbubble or Zazzle acted with the degree of intent and knowledge required for a counterfeiting claim.

### A.    The Allegedly Infringing T-Shirts Do Not Contain "Counterfeit" Marks

A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "[T]he standard for trademark counterfeiting is significantly higher than that for trademark infringement." *Tovey v. Nike, Inc.*, No. 1:12CV448, 2013 U.S. Dist. LEXIS 16084, at *8-9 (N.D. Ohio Feb. 6, 2013). "While infringement may well create confusion in the minds of consumers," "[c]ounterfeiting is sometimes referred to as 'first degree' infringement" because it "is the most blatant and egregious form of 'passing off.'" *Schneider Saddlery Co. v. Best Shot Pet Prods. Int'l, LLC*, No. 1:06-CV-02602, 2009 U.S. Dist. LEXIS 27227, at *9, 12 (N.D. Ohio Mar. 31, 2009). In other words, counterfeiting "seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). "This is a high bar, because ***slight differences, so long as they are apparent to the typical consumer upon minimal inspection, will defeat the allegation that a mark is counterfeit.***" *Schneider*, 2009 U.S. Dist. LEXIS 27227, at *13-14 (emphasis added). For this reason, courts have "uniformly" applied this provision only to "products that are stitch-for-stitch copies of those of another brand." *Gucci*, 868 F. Supp. 2d at 242.

Thus, "when determining whether a mark is counterfeit, courts generally consider

whether consumers would find the infringing mark 'identical with, or substantially indistinguishable from' a registered mark *as it appears in the marketplace*, rather than how two marks may appear in the abstract." *Schneider*, 2009 U.S. Dist. LEXIS 27227, at *13 (emphasis added; citation omitted); *see also Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) ("[A]n allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser."); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011) ("To establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context.").

Under these demanding standards, it is not enough for t-shirts sold through Redbubble and Zazzle to contain the words "GOT HOPE? I DO." To be counterfeits, those words must be *presented* in an "identical" or "substantially indistinguishable" manner on actual consumer merchandise. For example, in *Kelly-Brown v. Winfrey*, the court dismissed plaintiff's counterfeiting claim even though defendant used an identical phrase in connection with her own products and services, because the parties presented the marks in visually different ways:

> By comparing Defendants' use of the Phrase to Plaintiffs' use of the Phrase, it becomes abundantly clear that Plaintiffs have not stated a claim for trademark counterfeiting…. Plaintiffs depict the Phrase in non-italicized lowercase blue letters, followed by a trademark; Defendants depict the Phrase in italics, in either white ink or a combination of black and pink ink, varying between capital and lower case letters, and printed in a noticeably different font…. Since the the [sic] appearance of the [mark] as used by [defendants], both in itself and in how it appeared on [defendants' product], is not identical with or substantially indistinguishable from [plaintiffs'] use of the [mark], Plaintiffs' trademark counterfeiting claim fails.

No. 11 Civ. 7875 (PAC), 2012 U.S. Dist. LEXIS 29695, at *25-27 (S.D.N.Y. Mar. 6, 2012) (internal marks and citation omitted), *aff'd in relevant part*, 717 F.3d 295, 314-15 (2d Cir. 2013) ("[C]onsumers … would recognize the differences between Kelly-Brown's mark and the

defendants' representations of the words 'Own Your Power' from a cursory visual inspection.");
*see also Schneider*, 2009 U.S. Dist. LEXIS 27227, at *58-59 (concluding defendant's marks
"simply are not counterfeit as a matter of law" because those marks were "visually
distinguishable as they appear to consumers in the marketplace"); *Tovey*, 2013 U.S. Dist. LEXIS
16084, at *10 ("[T]he differences between Plaintiff's use of 'BOOM YO!' (wherein the 'YO' is
contained on the reverse side of apparel) and Defendant's apparel, which only contains a
'BOOM' on the frontside, would become readily apparent upon routine consumer inspection.");
*Birmingham v. Mizuno United States, Inc.*, No. 5:09-CV-0566 (GTS/GHL), 2011 U.S. Dist.
LEXIS 34696, at *26-27 (N.D.N.Y Mar. 31, 2011) (finding no counterfeiting where plaintiffs'
"'Softhands' mark is written in bubble font with the 'o' of the word appearing in the triangular
shape of the actual training device …, while Defendant's words 'Sofhands Construction' appear
in a considerably different font with the words semi-enclosed by a graphic wave design").

 Here, a cursory visual comparison between Plaintiffs' t-shirts (center) and those sold to
Ms. Vollmer through Redbubble and Zazzle shows that their marks look *nothing* alike:

  

These items simply are not counterfeits. The fonts, sizes, and layouts of the phrases on these
three t-shirts are completely different from one another. Moreover, Plaintiffs' shirts show the
phrase "got hope?" on the front and "i do." on the back, while Redbubble and Zazzle show the
entire phrase on the front and nothing on the back. Plaintiffs' shirt also contains no additional

content, whereas the shirt sold through Redbubble has an additional pink logo, and the shirt sold through Zazzle has two additional lines of text. *See Schneider*, 2009 U.S. Dist. LEXIS 27227, at *58 (finding no counterfeiting where defendant's product included wordage that plaintiff's did not); *Tovey*, 2013 U.S. Dist. LEXIS 16084, at *10 (same); *Birmingham.*, 2011 U.S. Dist. LEXIS 34696, at *27 (same). No reasonable juror could possibly conclude that the marks on these t-shirts are "stitch-for-stitch" copies of one another. For this reason alone, Plaintiffs' counterclaim claim fails as a matter of law and should be dismissed with prejudice.

## B. Plaintiffs Fail to Plead Any Facts Showing That Redbubble or Zazzle Knowingly and Intentionally Allowed Counterfeit Products to be Sold

The counterfeiting claim must also be dismissed for a second, independent reason. As explained above, Plaintiffs must show that Redbubble and Zazzle "intentionally used" a counterfeit of the Mark while "knowing it was a counterfeit." *Too*, 229 F. Supp. 2d at 837. The Complaint, however, only states that "Defendants have acted with knowledge of Plaintiff's ownership of the Trademark and with deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by Plaintiffs for Defendants' profit." Compl. ¶ 43. Plaintiffs do not offer a single factual allegation in support for this naked and formulaic assertion.

This Court has squarely held that boilerplate allegations of knowledge and intent are insufficient to satisfy the scienter requirements for a cause of action:

> [U]nder *Iqbal* the Court is not required to accept conclusory statements as true if they have no factual support…. This principle also applies to allegations regarding a person's mental state…. In *Iqbal*, the Supreme Court disregarded a respondent's bare assertions that petitioner "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" … The Supreme Court reasoned that while a plaintiff was not required to plead allegations of mental state with particularity, the requirements of Rule 8 still applied…. The Court noted that "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."

*Martin v. Insight Commc'ns Co., LP*, No. 2:10-cv-537, 2011 U.S. Dist. LEXIS 32601, at *16-18 (S.D. Ohio Mar. 28, 2011) (Watson, J.) (citation omitted) (dismissing malicious prosecution claim where "other than Plaintiff's bare assertions regarding the Insight Defendants' intent and knowledge, she provides absolutely no factual support for the notion that these Defendants knowingly provided false information"); *see also, e.g., Katoula v. Detroit Entm't, LLC*, 557 Fed. Appx. 496, 498 (6th Cir. 2014) ("[A]fter the Supreme Court's decisions in *Iqbal* and *Twombly*, a plaintiff must do more than make the conclusory assertion that a defendant acted willfully."); *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014) ("[A]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face.") (internal marks and citation omitted); *R&L Carriers, Inc. v. Affiliated Comp. Servs.*, 695 F. Supp. 2d 680, 689 (S.D. Ohio 2010) (dismissing infringement claim "because the complaints do not allege the requisite level of specific intent, or Defendants' knowledge of R&L's patent").

Thus, even if the t-shirts available on Redbubble and Zazzle's websites did contain counterfeit marks (which they clearly do not), the Complaint is still devoid of *any facts whatsoever* showing that Redbubble and Zazzle intentionally allowed counterfeit products to be sold via their marketplaces while knowing they were counterfeits of Plaintiffs' Mark. Indeed, Plaintiffs do not even allege that Redbubble and Zazzle were even aware of the *existence* of Plaintiffs' Mark before this lawsuit was filed. Without any such factual support, the counterfeiting claim is simply implausible and must be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint against Redbubble and Zazzle for lack of personal jurisdiction and/or in favor of binding arbitration. In the alternative, the Court should dismiss Plaintiffs' counterfeiting claim as a matter of law.

Dated:  June 17, 2016

Respectfully submitted,

*s/ Mitchell A. Tobias*
Mitchell A. Tobias (0084833)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6214
Facsimile: (614) 719-4627
Email: matobias@vorys.com

Brian M. Willen (*admitted pro hac vice*)
Jason B. Mollick (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com
Email: jmollick@wsgr.com

*Counsel for Defendants*
*Redbubble Inc. and Zazzle Inc.*

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2016, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the

following attorneys of record:

> Michael James Gallagher
> Gallagher & Dawsey
> P.O. Box 785
> Columbus, Ohio 43216-0785
> mgallagher@invention-protection.com
>
> *Counsel for Plaintiffs*
>
> Marcella C. Ducca
> Greenberg Traurig, LLP
> 3333 Piedmont Road NE, Suite 2500
> Atlanta, Georgia 30305
> duccam@gtlaw.com
>
>     - and -
>
> Ian C. Ballon (*admitted pro hac vice*)
> Greenberg Traurig, LLP
> 1900 University Avenue, 5th Floor
> East Palo Alto, California 94303
> ballon@gtlaw.com
>
> *Counsel for Defendants*
> *Amazon.com, Inc. and CafePress, Inc.*

*s/ Mitchell A. Tobias*
Mitchell A. Tobias
